UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DARNELL COOPER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 24-cv-4031 |
| | ) |
| WILLIAM BOND, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MERIT REVIEW ORDER

Plaintiff, proceeding *pro se*, files a Complaint under 42 U.S.C. § 1983 alleging Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment while he was incarcerated at Hill Correctional Center ("Hill"). (Doc. 1). This cause is before the Court for a merit review of Plaintiff's Complaint. The Court is required by 28 U.S.C. § 1915A to "screen" Plaintiff's Complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." § 1915A. In reviewing the Complaint, the Court takes all factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (internal citation omitted).

## ALLEGATIONS

Plaintiff files suit against Hill's Medical Director Kurt Osmundson, optometrists Dr. William Bond and Dr. Anthony Carter, and nurse practitioner Kasey Kramer.

1

Plaintiff received eye treatment at Illinois Eye Center in 2018. "Punctual plugs (little needles that help relieve dry eyes)" were surgically placed in the lower part of Plaintiff's left and right eyes, which relieved his pain and blurred vision. (Doc. 1 at p. 18).

On April 12, 2022, Defendant Carter, the prison's optometrist, informed Plaintiff that the punctual plug in his left lower eye was missing.

On May 7, 2022, Plaintiff's pain medication was discontinued. Plaintiff does not indicate who was responsible for discontinuing his prescription.

On September 7, 2022, Defendant Osmundson authorized Plaintiff to receive an off-site consultation with Defendant Bond at Bond Eye Associates.

Plaintiff had an appointment with Defendant Bond on September 7, 2022. Defendant Bond determined that Plaintiff would benefit from permanent punctual plugs in his upper left and right eyes. Defendant Bond prescribed Maxitrol (eye drops) to treat an infection (stye) and/or allergies before placing the punctual plugs. Plaintiff alleges he never received the eye drops.

On September 13, 2022, Plaintiff had an appointment with Defendant Carter.

On September 27 and 29, 2022, Plaintiff received approval for another appointment with Defendant Bond.

During an examination on October 4, 2022, Defendant Bond noted that the stye and/or allergies were still present in Plaintiff's lower left eye and prescribed Maxitrol again. Plaintiff alleges Defendant Bond was supposed to replace the punctual plug in his lower left eye, but instead, he placed a punctual plug in Plaintiff's upper right and left eyes, which caused extreme pain, severe headaches, blurred vision, infections, and daily suffering. In addition, Plaintiff alleges Defendant Bond knew that placing the punctual plugs before the infection and/or allergies had resolved would cause the plugs to have an adverse effect.

On October 18, 2022, Plaintiff wrote to Defendant Carter to complain about the severe pain and suffering he was experiencing due to the punctual plugs Defendant Bond placed in his upper left and right eyes. Plaintiff had an appointment with Defendant Carter the same day.

On October 18, 2022, Plaintiff alleges Defendant Kramer discontinued his pain medication and did not provide an alternative medication, even though he was still in pain. On October 26, 2022, Defendant Kramer allegedly discontinued Plaintiff's prescription for Tegretol.

On October 20, 2022, Plaintiff was referred for a follow-up appointment with Defendant Bond. On October 27, 2022, Defendant Osmundson approved the off-site referral.

On October 31, 2022, Plaintiff was scheduled for an appointment with Defendant Bond. Plaintiff also had an appointment with Defendant Carter, who indicated that he would be scheduled to have the lower left eye punctual plug replaced.

On December 7, 2022, Defendant Bond prescribed Naphcon-A and discontinued the prescription for Tobradex. Plaintiff complained about daily pain and severe migraine headaches caused by the punctual plugs.

On December 13, 2022, Plaintiff had an appointment with Defendant Carter.

On February 8, 2023, Plaintiff filed a medical request form to inform Defendant Carter that he still had a stye in his lower left eye, his eye was swollen and turning black, the inside of his left eye was "bloody red," and he was still in pain. *Id.* at p. 22.

An appointment with Defendant Carter was scheduled for February 14, 2023, but was later cancelled.

During an examination on February 28, 2023, Defendant Carter allegedly informed Plaintiff the two punctual plugs Defendant Bond had surgically placed in his upper left and right eyes were missing.

On March 15, 2023, Plaintiff filed a medical request form complaining about severe pain, due to Defendant Kramer discontinuing his pain medication.

During an examination on July 18, 2023, Defendant Carter informed Plaintiff that Defendant Bond refused to see him; however, Plaintiff was scheduled for an appointment with Illinois Eye Center.

On September 13, 2023, Plaintiff filed a medical request form to complain about continued pain and blurred vision. On September 25, 2023, Plaintiff submitted another medical request form seeking treatment for his dry eye condition.

On October 2, 2023, Plaintiff filed another grievance complaining about pain and requesting off-site treatment at Illinois Eye Center.

On October 17, 2023, Plaintiff had an appointment with Defendant Carter, who informed Plaintiff he would be sent to the Illinois Eye Center for an evaluation.

Finally, in October 2023, Defendant Bond removed the punctual plugs from Plaintiff's upper left and right eyes. Thereafter, Plaintiff was sent to the Illinois Eye Center, where it was determined that the lower left eye punctual plug was still there "down into the canal of [his] eye." *Id.* at p. 27.

## ANALYSIS

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). A claim does not rise to the level of an Eighth Amendment issue, however, unless the punishment is "deliberate or otherwise reckless in the criminal law

4

sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir. 1996); *see also Pyles v. Fahim*, 771 F.3d 403, 411-12 (7th Cir. 2014) (healthcare providers may exercise their medical judgment when deciding whether to refer a prisoner to a specialist). The failure to refer is deliberately indifferent only if "blatantly inappropriate." *Id*. at 411-12. Denying a referral in favor of "easier and less efficacious treatment" may be blatantly inappropriate if it does not reflect sound professional judgment. *Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016), *as amended* (Aug. 25, 2016).

"Within the universe of deliberate indifference cases is a narrower category where a prisoner alleges not that his condition was ignored entirely, but that he received constitutionally deficient treatment for the condition." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019). "[T]hese cases are better framed 'not [as] deliberate indifference to a serious medical need,' but as a challenge to 'a deliberate decision by a doctor to treat a medical need in a particular manner.'" *Id.* (citing *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)). In such cases, courts defer to a medical professional's treatment decisions "unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles*, 771 F.3d at 409 (quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008)). A disagreement between the prisoner and his medical provider "about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles*, 771 F.3d at 409 (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)).

Plaintiff alleges Defendant Bond was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Specifically, Plaintiff alleges that Defendant Bond "went

5

rouge" and placed a punctual plug in his upper right and left eyes instead of replacing the lower left eye punctual plug that was deemed missing on October 4, 2022. (Doc. 1 at p. 26). Plaintiff alleges the procedure caused extreme pain, severe headaches, blurred vision, infections, and daily suffering. Second, Plaintiff alleges Defendant Bond placed the punctual plugs before his infection and/or allergies had cleared, despite knowing this would cause adverse effects and previously recommending that the infection and/or allergies needed to be resolved before placing the plugs. Third, Plaintiff alleges Defendant Bond refused to remove the punctual plugs until October 2023, despite Plaintiff's frequent complaints of severe pain, blurred vision, swelling, and discoloration. It is unclear from the Complaint if Defendant Bond, an outside specialist, is a state actor. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 830 (7th Cir. 2009). Based on Plaintiff's allegations at this early stage of the litigation process, the Court finds that he has stated a plausible Eighth Amendment deliberate indifference claim against Defendant Bond.

The Court also finds that Plaintiff has stated an Eighth Amendment claim against Defendant Kramer for allegedly discontinuing his prescribed pain medications on October 18 and 26, 2022, even though she knew he was experiencing extreme pain.

Regarding Defendant Carter, Plaintiff alleges he recklessly disregarded Defendant Bond's prescription for Maxitrol to treat the eye infection and/or allergies in October 2022. Plaintiff also claims Defendant Carter knew that Defendant Bond's treatment had been ineffective, but turned a blind eye to Plaintiff's pain and worsening condition for months until his medical needs were considered "urgent" in October 2023. Based on his allegations, the Court finds Plaintiff has stated an Eighth Amendment claim against Defendant Carter.

Finally, regarding Defendant Osmundson, Plaintiff alleges he had the authority to ensure Plaintiff received off-site eye care to relieve his pain and suffering. Although Defendant

Osmundson was allegedly aware Plaintiff needed further treatment after punctual plugs were placed in his upper left and right eyes, he failed to refer Plaintiff for follow-up care for several months, which caused Plaintiff to endure extreme pain and blurred vision. The Court finds that Plaintiff has stated a plausible Eighth Amendment claim against Defendant Osmundson for delaying a referral for follow-up medical treatment.

**IT IS THEREFORE ORDERED:**

1) According to the Court's Merit Review of Plaintiff's Complaint under 28 U.S.C. § 1915A, this case shall proceed on an Eighth Amendment deliberate indifference claim against Defendants Bond, Kramer, Carter, and Osmundson. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

3) The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

4) Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses

appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

   5) If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

   6) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

7)    Defendants' counsel is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Defendants' counsel shall arrange the time for the deposition.

8)    Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

9)    Plaintiff shall be provided a copy of all pertinent medical records upon request.

10)    Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

11)    The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.


ENTERED:    4/2/2024

s/ James E. Shadid  
James E. Shadid  
United States District Judge